## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA |
| v. |
| SHAWNDALE CHILCOAT and DONALD CHILCOAT, |
| Defendants. |

Criminal Action No. 22-299 (CKK)

### MEMORANDUM OPINION & ORDER
(October 7, 2024)

On September 30, 2024, Defendants Shawndale Chilcoat and Donald Chilcoat jointly requested leave to file, *pro se*, a [206] Motion to Lift or Modify the Protective Order. The Court granted leave to file and now **DENIES IN PART** that motion. The Court **GRANTS IN PART** the motion in one narrow respect: The Court will strike any reference to Defendants' consent in the Protective Order.

### I. BACKGROUND

The procedural history of this case is long and complex. This Court's [178] Order sets forth in greater depth the latest developments. Less detail is required here.

Until recently, there was no protective order in this matter. At a status hearing on September 12, 2024, the Government informed the Court that it would move for the entry of a protective order. *See* Minute Order, Sept. 12, 2024. During that hearing, the Court discussed the terms of the Government's proposed protective order with Defendants and their counsel. *See id.* And later that day, the Government filed an Unopposed Motion for Protective Order indicating—consistent with discussions at the status hearing—that "Defendants do not oppose" entry of the protective order. ECF No. 176 at 1. On September 13, 2024, the Court granted the Government's

motion, finding the Protective Order was necessary to "expedite the flow of discovery material between the parties and adequately protect the United States' legitimate interests" in the nondisclosure of material subject to the Protective Order's terms.  ECF No. 177 at 1.

On September 20, 2024, the parties returned to Court for a plea hearing.  *See* Order, ECF No. 178 at 1–2.  But Defendants rejected the Government's plea offer, and the Court addressed different matters.  *Id.* at 1, 3.  Among those matters was the Protective Order:

> The Court explained to Defendants that the Protective Order—which the Court had already entered—does not prevent them from viewing or using discovery in their defense.  By its terms, the Protective Order does not "limit either party in the use of the materials in judicial proceedings in this case."  ECF No. 177 at 3.  It merely restricts the dissemination of certain designated materials to third parties and establishes procedures so Defendants can access those materials with the assistance of counsel.

Order, ECF No. 178 at 2.  When Defendant Shawndale Chilcoat suggested that the Protective Order was unlawful because she did not consent to its terms, the Court explained "that it had already entered the Protective Order, that the Court did so because it determined the Protective Order's terms were appropriate under the circumstances, and that Mrs. Chilcoat's consent was not necessary to that determination."  *Id.* at 2–3.  The Court provided Mrs. Chilcoat additional time to review the Protective Order so she could articulate any specific objections to its terms, but Mrs. Chilcoat disputed terms the Protective Order does not contain.  *See id.* at 2.

On September 30, 2024, the Court received Defendants' request for leave to file a [206] Joint Motion to Lift or Modify the Protective Order (the "Motion" or "Defs.' Mot.").  The Motion seeks three forms of relief.  First, Defendants ask that the Court "[l]ift or modify the Protective Order to allow the Defendants full and unrestricted access to *their own* exculpatory evidence."  Defs.' Mot. at 12 (emphasis added).  Second, Defendants ask the Court to vacate the Protective Order or modify it so that it "is properly justified under national security standards, as required by

Executive Order 13526 and relevant legal precedents." *Id.* Third, Defendants request that the Court "[p]rovide Defendants with clear guidance on the scope of the Protective Order." *Id.*

## II. ANALYSIS

Defendants' Motion appears to misunderstand what the Protective Order is and what it does. The Court has addressed these misimpressions orally and in writing on multiple occasions. *See* Order, ECF No. 178 at 1, 2–3. But before treating Defendants' arguments in detail, and at Defendants' request, the Court pauses to clarify the Protective Order's scope again:

- Under the Federal Rules of Criminal Procedure and applicable precedent, Defendants' consent is *not* a prerequisite to the entry of the Protective Order. And a protective order entered by this Court is enforceable whether or not Defendants consent to its terms.

- The Protective Order governs *only* discovery materials "provided by the United States." Protective Order, ECF No. 177 at 1. The Protective Order states explicitly that it "does not apply to materials" that were "derived directly from" Defendants or that "the defense obtains by means other than discovery" from the Government. *Id.* at 5.

- The Protective Order *does not* prevent Defendants from viewing any discovery. It sets rules for how Defendants can access some discovery materials. *See id.* at 2–4. And it prevents Defendants from making or sharing copies of some materials with third parties. *Id.* But all discovery material is still disclosed to Defendants.

- The Protective Order *does not* "suppress" any discovery materials. That is, the Protective Order states explicitly that it "shall not limit either party in the use of the materials in judicial proceedings in this case." *Id.* at 3. It requires some materials to be filed under seal and sets rules for how they can be discussed in open court. *Id.* But it "does not constitute a ruling" on the "admissibility of any material." *Id.* at 6.

With that said, the Court turns to Defendants' Motion.

## A. Defendants' "Own Exculpatory Evidence"

Defendants first request that the Court "[l]ift or modify the Protective Order to allow the Defendants full and unrestricted access to their own exculpatory evidence." Defs.' Mot. at 12. This request appears to relate to certain "video evidence and recorded conversations" created by Defendants and in Defendants' possession. *Id.* at 2. Defendants stress repeatedly that they are concerned about the effect of the Protective Order on this material.[1]

But the Protective Order does not apply to materials Defendants have gathered themselves. Section 1 of the Protective Order ("Materials Subject to this Order") provides, in relevant part: "This Order governs *materials provided by the United States* at any stage of discovery and which the United States has identified as either 'Sensitive' or 'Highly Sensitive.'" Protective Order, ECF No. 177 at 1 (emphasis added). Any materials not provided to Defendants by the United States— for example videos or recordings made by Defendants of anything other than the Government's discovery productions—are not subject to the Protective Order's terms.

Lest there be any doubt, Section 11 of the Protective Order ("Automatic Exclusions from this Order") further provides that the Protective Order "does not apply to materials that . . . were derived directly from Defendant[s]"—such as "financial records, telephone records, digital device downloads" and the like—or "[m]aterials that the defense obtains by means other than discovery" from the Government. *Id.* at 5. In other words, exculpatory evidence that Defendants came to possess on their own are not subject to the Protective Order.

In sum, there is no need to vacate or modify the Protective Order "to allow the Defendants

---

[1] *See, e.g., id.* at 4 ("The Defendants possess critical exculpatory evidence . . . ."), 7 ("Defendants are expected to comply with restrictions that may apply even to their own exculpatory evidence . . . ."), 11 ("Defendants seek to protect their exculpatory evidence from unjust control and suppression by the government.").

full and unrestricted access to their own exculpatory evidence." Defs.' Mot. at 12.  The Protective Order has no bearing on that evidence.  And Defendants already have the full and unrestricted access they request.  Accordingly, the Court **DENIES** Defendants' motion to vacate or modify the Protective Order on this basis.

### B. Defendants' Legal Objections to the Protective Order

In scattershot form, Defendants also raise a series of challenges to the Protective Order as a whole.  Because Defendants made their Motion *pro se*, the Court has attempted to distill these challenges.  But again, Defendants arguments flow from misunderstandings of the Protective Order. None present an actual objection to a term or effect of the Protective Order this Court issued.

### 1. Executive Order 13,526

In various places, Defendants argue the Protective Order violates Executive Order 13,526 and should be vacated on that basis.  *See* Defs.' Mot. at 3, 4–5, 10, 12.  This argument appears to stem from Defendants' fundamental confusion about the Protective Order.

Executive Order 13,526 "prescribes a uniform system for classifying, safeguarding, and declassifying national security information."  Exec. Order No. 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009).  To that end, it establishes classification levels (like "Top Secret"), vests in designated Executive-branch officials the power to classify, and clarifies the bases on which information can be classified.  *Id.* §§ 1.1–1.4.  The Executive Order provides, for example, that the President can classify as "Secret" information about "scientific, technological, or economic matters" to prevent "serious damage to the national security"—but not to "restrain competition."  *Id.* §§ 1.2–1.4, 1.7.

But Executive Order 13,526 has nothing to do with the Protective Order or this case.  Defendants argue Executive Order 13,526 creates a "stringent standard" for the issuance of protective orders and is "intended to prevent the misuse of protective orders."  Defs.' Mot. at 4.

5

That mischaracterizes the Executive Order. Executive Order 13,526 does not even mention protective orders. Nor would it have any reason to. Executive Order 13,526 controls the internal workings of the Executive branch. The Classified Information Procedures Act, 18 U.S.C. App. 3 § 1, *et seq.* (CIPA), controls the use of classified information in criminal prosecutions.

More importantly, this case does not involve classified information at all. No party has alerted the Court to the existence of any classified information related to this matter, as CIPA would require. *Id.* §§ 2, 5, 6. Indeed, the Court is unaware of *any* prosecution arising from the events of January 6, 2021—other than the ongoing prosecution of former President Donald Trump—that has involved CIPA.

Among other things, the Protective Order prevents disclosure of some information related to the security of the U.S. Capitol and creates levels of sensitivity designations. *See* ECF No. 177 at 2–3. To a layman, that might look a bit like the classification process. But while Defendants' mistaken conflation of the Protective Order with national-security classification is understandable, that conflation is still a mistake. Executive Order 13,526 has no bearing on the Protective Order because the Protective Order does not concern classified information.[2] Accordingly, the Court **DENIES** Defendants' request for relief on the basis of Executive Order 13,526.

### 2.  Constitutional Arguments

Elsewhere, Defendants contend that the Protective Order is unconstitutional. *See* Defs.' Mot. at 7, 11. Defendants posit that the Protective Order "grant[s] the government and the Court authority to label any materials as 'sensitive.'" *Id.* at 7. From this premise, they argue that the "blanket designation of sensitivity violates Defendants' rights under *Brady v. Maryland*, 373 U.S. 83 (1963)," by relieving the Government of its "obligat[ion] to disclose all exculpatory" evidence

---

[2] For that reason, Defendants reliance on *United States v. Reynolds*, 345 U.S. 1 (1953), and *Hamdi v. Rumsfeld*, 542 U.S. 507 (2007)—which concern national-security and state-secrets privileges over classified information—is inapt.

and "[s]uppressing such evidence." Defs.' Mot. at 7, 11. But again, these arguments proceed from fundamental misunderstandings about the nature and effect of the Protective Order.

At the outset, Defendants' characterization of the Protective Order's provisions for sensitivity designations is wrong. The Protective Order does not empower this Court to label materials as sensitive: the Government—not the Court—is responsible for designating the discovery it provides as sensitive. ECF No. 177 at 1. Nor does the Protective Order effect a blanket designation of sensitivity on all materials. It allows the Government to designate as sensitive ten narrow categories of information like "email addresses, driver's license numbers," "mental health records," "[t]ax returns," and certain information related to security measures at the U.S. Capitol. *Id.* at 1–2. The Protective Order also contains assurances that the Government will not designate materials as sensitive "unless such designation is necessary." *Id.* at 2. And it provides a dispute-resolution mechanism in the event Defendants disagree with any of the Government's designations. *Id.* at 4.

Defendants are similarly mistaken about the legal effect of the Protective Order. It does not, and could not, have any effect on the Government's obligation to disclose exculpatory evidence to Defendants. Section 12 of the Protective Order provides explicitly that:

> Nothing in this Order modifies the United States' obligations at any stage of discovery in this case pursuant to Federal Rules of Criminal Procedure 16 and 26.2, Local Criminal Rule 5.1, 18 U.S.C. § 3500 (the Jencks Act), and the government's general obligation to produce exculpatory and impeachment information in criminal cases.

ECF No. 177 at 5. The Court has explained, on multiple occasions, that nothing in the Protective Order prevents Defendants from viewing discovery materials. *See* Order, ECF No. 178 at 1–2. [3]

---

[3] Under the Protective Order, Defendants require the assistance of designated persons to view and handle sensitive materials. ECF No. 177 at 2–4. Defendants have repeatedly refused to engage with their present counsel and are actively seeking new counsel. *See* Order, ECF No. 178 at 5. At the time of writing, they have not secured that counsel.

Indeed, as Defendants know, the Government has already made available all discovery—including any evidence Defendants might conclude is exculpatory. *See id.* at 3. Defendants have unilaterally refused to review that discovery. *Id.* at 3–4. And they reiterate that they will continue to do so. Defs.' Mot. at 11 ("The Defendants wish to make it explicitly clear that they have no intention of reviewing the government's discovery . . . ."). But Defendants' decision not to participate fully in their defense does not render the Protective Order unlawful or constitute a *Brady* violation.

Defendants' argument that the Protective Order suppresses evidence "in violation of their due process rights" is also misguided. Defs.' Mot. at 11. The Protective Order does "not limit either party in the use of the materials in judicial proceedings in this case." ECF No. 177 at 3.[4] And it clarifies further that it "does not constitute a ruling" on the "admissibility of any material." *Id.* at 6. Thus, nothing in the Protective Order prevents Defendants from introducing evidence at trial or inhibits "Defendants' ability to present a full defense." Defs.' Mot. at 10. The Government's pending motions *in limine* ask the Court to find certain evidence inadmissible. *See* ECF Nos. 156, 157. But oppositions to those motions—not a constitutional challenge to the Protective Order—are the proper medium for Defendants' arguments about evidence suppression.[5]

Defendants' constitutional challenges to the Protective Order proceed from fundamental misunderstandings about its terms. Indeed, as the Court has explained, the Protective Order directly addresses all their concerns. Accordingly, the Court **DENIES** Defendants' request for relief on the basis of their constitutional arguments.

---

[4] The Protective Order does require some materials to be filed under seal and sets rules for how those materials can be discussed in open court. ECF No. 177 at 3. If at a later date, having reviewed sensitive discovery materials, Defendants intend to introduce such material at trial or include it in a filing, they can revisit these terms under the Protective Order's dispute-resolution clause. *Id.* at 4.

[5] The Court has already allowed Defendants additional time to secure new counsel who will respond to those motions as appropriate. *See* Order, ECF No. 178 at 4–6.

## C. Defendants' Consent

Defendants ask that the Court "reconsider the imposition of the Protective Order, which was applied without the Defendants' consent or signatures." Defs.' Mot. at 2. And Defendants appear to suggest that the Protective Order cannot stand without their consent. *Id.* at 7. Defendants are wrong. But for the sake of clarity, the Court will modify the Protective Order to remove any reference to Defendants' consent.

Recall that the Government first signaled its intention to move for a Protective Order in this matter at a status hearing on September 12, 2024. *See* Minute Order, Sept. 12, 2024. At that status hearing, the "Court reviewed the terms of [the Government's] proposed protective order with the parties and underst[ood] the Government [would] be moving to enter a protective order forthwith." *Id.* The Government then filed an Unopposed Motion for Protective Order, reporting that the "United States is authorized to represent to the Court that Defendants do not oppose this motion or the entry of the attached protective order." ECF No. 176 at 1. As the Court later observed, that was "consistent with Defendants' representations" at the September 12 status hearing. Order, ECF No. 178 at 1. So, even though the Unopposed Motion was not signed by Defendants themselves, *see* ECF No. 176-1 at 7–8, the Court entered the Protective Order "[t]o expedite the flow of discovery material and adequately protect the United States' legitimate interests" and "with the consent of the parties," ECF No. 177 at 1.

Defendants now claim that in conversations with their counsel to which this Court was not privy, they did not give "informed consent" to entry of the Protective Order because they were pressured to assent without "full knowledge" of the Protective Order's terms. *See* Defs.' Mot. at 5–6. The Court cannot and need not confirm this account. But for the sake of clarity, the Court will issue an Amended Protective Order removing any reference to Defendant's consent and thus

**GRANTS** Defendants' motion to modify the Protective Order in that respect.

The Court will not otherwise vacate or modify the Protective Order, as Defendants request. Federal Rule of Criminal Procedure 16(d) grants the Court discretion, on a showing of "good cause" by the Government, to issue a protective order governing the terms of the Government's disclosure of discovery materials. *See United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015). A defendant's consent is not a precondition to a finding of good cause. Indeed, Courts routinely enter protective orders in criminal cases over defendants' objections. *See, e.g., United States v. Rowbottom*, No. 24-cr-211, 2024 WL 3104815 (D.D.C. June 24, 2024) (TNM).

The Court has discussed the propriety of the Protective Order with the parties on numerous occasions. *See* Order, ECF No. 178 at 1–3; Minute Order, Sept. 12, 2024; ECF No. 169 at 2–3. On the basis of those discussions, the Court found—and still finds—that the Government has demonstrated good cause for entry of the Protective Order. And while Defendants assert that they do not consent to the Protective Order, they have never articulated any specific objection to its terms despite having many opportunities to do so. *See* Order, ECF No. 178 at 2–3.

Good cause for the Protective Order exists because the unfettered "disclosure of the materials in question would pose a hazard to others." *United States v. Dixon*, 355 F. Supp. 3d 1, 4 (D.D.C. 2019) (TNM). The Government has represented to the Court that discovery in this matter includes personally identifying information as well as details of security measures at the U.S. Capitol. Disclosing this information without protective measures could jeopardize potential witnesses and compromise the security of the Capitol. *See Rowbottom*, 2024 WL 3104815 at *2.

Good cause also exists because the Protective Order will not prejudice Defendants. *Dixon*, 355 F. Supp. 3d at 4. Again, Defendants have not identified any specific term of the Protective Order which would cause them prejudice. And, as explained, their global objections to the

Protective Order lack merit and follow from fundamental misunderstandings about how the Protective Order functions. In fact, proceeding without the Protective Order would prejudice Defendants and the Government, requiring time-consuming review and redaction processes that would strain the Government's resources and inhibit Defendants' ability to prepare their defense. *See Rowbottom*, 2024 WL 3104815 at *3. The purpose of the Protective Order is "[t]o expedite the flow of discovery material" from the Government to Defendants. ECF No. 177 at 1.

Next, good cause exists for the Protective Order because "any public interest in the materials covered . . . will not be harmed by its issuance." *United States v. McCaughey*, 534 F. Supp. 3d 132, 142 (D.D.C. 2021) (TNM). The Protective Order specifically excludes any information that is, or later becomes, part of the public record. ECF No. 177 at 5. And the public has little, if any, interest in the narrow subsets of sensitive information covered by the Protective Order. Defendants do not argue otherwise.

Good cause justifies the Protective Order in this case, "as it has in countless others." *Rowbottom*, 2024 WL 3104815 at *3. Indeed, this Court, like others, is unaware "of any court rejecting the protective order proposed here—and there have been over 1,300 January 6 cases charged in this District." *Id.*

\* \* \*

In sum, Defendants will remain bound by the terms of the Amended Protective Order this Court will issue separately. That Amended Protective Order, like the initial Protective Order, *does not* prevent Defendants from viewing any discovery. It does not govern any evidence Defendants have procured on their own. Nor does it determine whether any particular item of discovery can be introduced at trial. It merely imposes procedures for how certain discovery material from the Government can be viewed, stored, and shared. Those procedures are designed to ensure that the

11

personal information of third parties to this litigation does not wind up online or in the pages of The Washington Post.  And those procedures further ensure that security measures at the Capitol and the safety of those charged with protecting the Capitol are not compromised.

## IV. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that Defendants' [206] Motion to Vacate the Protective Order is **DENIED**;

And it is further **ORDERED** that Defendants' [206] Motion to Modify the Protective Order is **GRANTED IN PART** to strike any reference to Defendants' consent.

*The Clerk of Court is instructed to send a copy of the Memorandum Opinion and Order overnight to Defendants' addresses of record.*

Dated: October 7, 2024

COLLEEN KOLLAR-KOTELLY
United States District Judge